UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


BARRY GIBBS,                          :
                                      :
              Petitioner              :
                                      :      NO. 3:CV-99-1627
        -vs-                          :
                                      :      (Judge Kosik)
                                      :
FREDERICK K. FRANK, et al.,           :
                                      :
              Respondents             :


**<u>MEMORANDUM</u>**

This matter is presently before us on the application of Barry Gibbs, filed on May 10, 2005, seeking his release in accord with this court's November 18, 2004 order directing the Commonwealth of Pennsylvania "to either release Petitioner or retry him within 120 days."; claiming that the Commonwealth failed to try him expeditiously and has deliberately acted in a manner that made it impossible for a timely retrial to take place.[1]  The application has been briefed, argued and re-briefed.

---

[1]The 120 days ran to March 18, 2005.  Since the present application was filed, Gibbs was retried and again convicted on June 30, 2005.  Throughout this proceeding, neither side addressed whether Gibbs could not have, if released, been again arrested for murder.  *Cleary v. Henry*, 70 F.3d 1277 (CA9, 1995), unpublished opinion, *citing Foster v. Lockhart*, 9 F.3d 722, 727-728 (8th Cir. 1993), since the conditional writ in this case remanded for trial and did not appear to bar re-arrest for a crime not subject to any statute of limitations.

Background

This court's order of November 18, 2004 resulted from a decision of the United States Court of Appeals for the Third Circuit filed on October 14, 2004, to "*Barry Gibbs v. Frederick K. Frank; District Attorney of Pike County; Attorney General of Pennsylvania*," 387 F.3d 268 (3d Cir. 2004).  The decision remanded the cause to the District Court for it to grant Gibbs' petition for a writ of habeas corpus and "require the State to either release Gibbs or retry him within a specified time period."[2]

The gist of the appellate decision is that Gibbs' constitutional privilege against self-incrimination was violated in his second trial for murder when Dr. Robert Sadoff, a Commonwealth psychiatrist from the first trial, was allowed to offer inculpatory statements made by the defendant during his compelled examination by the doctor who gave him the *Miranda* warnings.  While Dr. Sadoff was offered at the first trial in response to a defense claim of mental infirmity, that trial was reversed for unrelated reasons. In the second trial, the defense did not pursue a mental infirmity defense, but the prosecution was permitted to elicit the inculpatory statements made to Dr. Sadoff as part of their case-in-chief.

On November 23, 2004, the Commonwealth filed a motion for reconsideration of our Order.  In addition, on December 4, 2004,

---

[2]While not binding on us, the District Court directed retrial in 120 days based on Pa.R.Cr.P. 600(D)(1) requiring remanded cases to be retried within 120 days of the date of remand or 365 days if the defendant is on bail.

the Commonwealth sought to have the appellate court recall its judgment in lieu of a mandate.  This was opposed by Gibbs' appellate counsel on December 13, 2004.  The stay was in part based on the stated intent of the Commonwealth to seek certiorari in the U.S. Supreme Court.  The stays were denied and the certiorari route was abandoned.

During the appellate stages of his case, Gibbs had an attorney, Mark A. Berman, of Newark, New Jersey, who was appointed by the appellate court to represent him.  After our Order of November 18, 2004, Berman wrote to this court on November 29, 2004 indicating his commitment to Gibbs.  He expressed his interest in an appointment if there was to be any further federal litigation without the necessity of filing a petition.  In the next year on May 2, 2005, an associate of Ronald M. Bugoj, Esquire, wrote to this court that she and Mr. Bugoj of Honesdale, Pennsylvania, were appointed to represent Gibbs in the state retrial.  The associate, Ronnie Fischer, stated that Gibbs wished to file an application for release based on a perceived violation of our November 18th Order, but their state representation was limited to the state proceeding. As a result, on May 9, 2005, this court appointed Mark A. Berman, Esquire, Gibbs' appellate counsel, who subsequently filed the present application before us on May 27, 2005.

This court was out of the loop with respect to any state court proceedings after its Order of November 18, 2004 until the letter from Mr. Bugoj on May 2, 2005.  This was followed by the present application.  In response to the application before us, respondents

filed a memorandum and exhibits in opposition, claiming that in response to our November 18th Order, this case was placed on the March 2005 trial list in Pike County, Pennsylvania, with the trial to begin on March 7, 2005 and the first pre-trial conference was scheduled for February 8, 2005.  Respondents claim the defense tactics with the present application for release were intended to "run out the clock" on the court's Order to frustrate the trial from taking place by March 18, 2005, in order to secure the release of Gibbs.  Of course, as we noted earlier, petitioner attributes similar motives to the respondents' intent on delaying a re-trial in 120 days.

On July 6, 2005, after the retrial and conviction of Gibbs on June 30, 2005, counsel Berman in this matter wrote to the court representing that in the retrial, the Commonwealth introduced the testimony from the defense psychiatrist expert in the earlier trial, Dr. Turchetti, despite the fact that Gibbs did not pursue a mental infirmity defense.[3]  Counsel had added this issue to the present application claiming this event as a flagrant disregard of the Third Circuit's holding dealing with Dr. Sadoff's testimony in the second trial.

We will address the issues presented.

---

[3]Dr. Turchetti was court-appointed at the instance of the defense in the first trial.  He and Dr. Sadoff, a Commonwealth psychiatrist, testified in the first trial.

<u>Discussion</u>

I.

We initially noted that the matter before us had its genesis in a conditional writ of habeas corpus issued on remand from the appellate court; conditional in the sense that Gibbs was to be retried or released.  The United States Supreme Court has held that "habeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 863 (1995).  This indicates that a court has broad discretion in conditioning a judgment.   In *Gilmore v. Bertrand*, 301 F.3d 581, 582-583 (7th Cir. 2002), the court held that this discretion includes affording the state additional time beyond the period prescribed in a conditional writ to cure a constitutional deficiency.  We should note that the state did not request additional time, presumably because the state court scheduled retrial for March 7, 2005, well within the March 18, 2005 timetable, and before the defense found it necessary to seek a continuance of the trial date compelled by events wholly attributable to the circumstances making it impossible to adhere to the March 7th trial date.

Unaware if this Circuit has ever addressed the nature of habeas corpus as an equitable remedy in the context of our case, we look to *Gilmore* again for its holding that the court's discretion in issuing conditional writs does not mean the court must release a prisoner if the state fails to act in a timely manner, at p.583, alluding to *Phifer v. Warden, U.S. Penitentiary, Terre Haute*, 53 F.3d 859, 864-865 (7th Cir. 1995).  In *Phifer*, the court said that

a district court "may" order the release of a prisoner.  Further, that:

> A conditional order's framework contemplates that a district court will eventually make an assessment concerning compliance with its mandate.  In many cases, whether or not the state has complied will be apparent – where, for instance, a court orders a new hearing and the state completely fails to provide one.  In these cases, a specific assessment concerning compliance may be unnecessary – the writ will simply issue because it is apparent that the state has not fulfilled the mandate.  In other cases, however, the district court will need to examine the content of the state's action to determine whether compliance was sufficient.

*Id.* at 865.

We need to examine the history of this case, since our mandate was to retry this action within 120 days of November 18, 2004, to determine if the Commonwealth's compliance was sufficient.

1.   The opinion of the circuit court directing the district court to grant Gibbs' petition for a writ of habeas corpus was filed on October 14, 2004.  The Judgment was docketed in the district court on November 17, 2004, followed by our Order of November 18, 2004.

2.  On November 10, 2004, Gibbs, incarcerated at SCI-Chester, Pennsylvania, until some time after February 17, 2005, wrote to his former state counsel, Ronald M. Bugoj,

Esquire, either November 5, 2004 or November 10, 2004.[4]
Petitioner informed counsel that the appellate court
granted him a new trial on October 14, 2004; that the
state was petitioning for a rehearing and then
certiorari; that while he had a lawyer for his appeal, a
new lawyer would have to be appointed.  Gibbs cited
several cases for counsel to read.  He then indicated
that if Bugoj would be interested in representing him to
let him know.

3.   Counsel Bugoj responded on November 12, 2004
expressing an interest in the case, and he had contacted
the  county court administrator to express his interest.

4.   On November 24, 2004, Gibbs again wrote to counsel
Bugoj.  He indicated his research on the issue of bail.
He noted his uncertainty about Mr. Berman's continuing
representation, but said he would not mind having him.

5.   On December 22, 2004, there was another letter from
Gibbs to Bugoj.  He advises that the Third Circuit denied
the Commonwealth's motion to stay their judgment on
December 16, 2004 and that his research indicated that a

---

[4]Appendix "B" under seal, filed as part of the
Commonwealth's response to the present application for release,
Document 42.  The appendix contains several letters from Gibbs.
The letters were received in state court on May 11, 2005 as part
of a scheduled hearing.

"single justice" [of the Supreme Court] could grant a stay but that it was unlikely.  He surmised that the state was stalling "while the 120 days . . . are ticking."  He notes that by the time the county appoints counsel, the trial date would be days away and counsel would be "forced" to ask for a continuance.  He sought to have Bugoj contact Berman on how to proceed.  Gibbs noted expectations of a trial, pre-trial motions galore, and "lots of collateral estoppel."  He lamented his inability to do legal research in the SCI library and the time authorities allotted him.

6.  Mr. Berman wrote to President Judge Joseph F. Kameen of Pike County on December 30, 2004, stating that counsel be appointed for Gibbs "immediately," and that Bugoj was willing to take the appointment.  The judge was unaware of the remand for retrial.  Nor would he be aware of our Order since only the parties would be electronically served by this court.  It was also the first indication to the judge that Gibbs would need new counsel for his retrial.

7.  On January 11, 2005, Judge Kameen wrote to the Chief Public Defender noting the case would be tried during the March 2005 term of court.  He directed that the public defender undertake the representation of Gibbs for the

trial set for March 7, 2005.  Assistant Public Defender
Robert F. Bernathy was designated by the Chief Public
Defender.

8.  Gibbs wrote to Bugoj on January 16, 2005 advising of
the judge's appointment and that he wrote to the Chief
Public Defender objecting.

9.  In the middle of February 2005, the Commonwealth
Attorney General, charged with the trials in this case,
filed a motion objecting to the appointment of Bernathy
on the grounds that his father was part of the original
investigative team from the Pennsylvania State Police who
participated in the original case some twenty-one years
earlier.

10.  In a letter to Mr. Bugoj on February 17, 2005, Gibbs
noted that the Attorney General preempted him in
objecting to Bernathy, but that he, too, was filing an
objection to Bernathy.  He again hoped to have Bugoj
appointed.

11.  Gibbs filed on what appears to be dated 2/17/05, a
pro se motion for appointment of counsel and a
supplemental motion for bail.[5]  In very competent form,

---

[5]Appendix "E" to Document 39.

he outlines the history of his case with appropriate citations. He relates that on January 11, 2005, the court appointed the public defender "again"; that the state objects to the defender because of a conflict of interest alluded to earlier; and that the State deliberately postured in its motion to require new defense counsel with less than a month to prepare for trial to his prejudice. Regardless, Gibbs claimed a conflict existed because public defenders ineffectively represented him in his earlier trials. He cites state authorities to support his claim of a presumed conflict because the lawyers essentially came from the same firm. Gibbs laments the time frame available before trial. His solution would be to appoint new counsel and grant him bail.

12. In an opinion of President Judge Kameen, Appendix "C" to Document 39, p.24, he notes that the previous motion of Gibbs dated February 17, 2005 was not filed until February 24, 2005. He also finds that on February 28th, the public defender filed a motion to withdraw as counsel. The motion was ruled on during a bail hearing on March 4, 2005. The court then appointed Attorney Bugoj and an associate.

On March 7th, the day trial was to begin, Bugoj requested a continuance until May 2, 2005. The defense

was given until April 1st to file numerous omnibus pretrial motions including a motion to recuse Judge Thomson who previously tried Gibbs. A recusal occurred on April 28, 2005 and a hearing on the motions was scheduled for May 11, 2005.

13. On May 20, 2005, Judge Kameen filed a thirty-page opinion, noting that the several continuances necessitated were at the request of the defense. Trial was scheduled for June 20, 2005.

In this opinion, the judge noted that ten pre-trial motions were filed. He ruled on the motions, but because many issues raised by the defense had previously been determined by the trial court in Gibbs' previous trials, the court addressed, in a comprehensive fashion, only four; a motion to suppress specific evidence, two motions to dismiss charges, and a motion for release on nominal bail because he was not going to be tried within the 120 days of our remand order or March 18, 2005.

While there is no doubt Gibbs was not retried within 120 days of our order, upon our review of the history of this case since our order of remand, and upon consideration of the earlier cited authorities, particularly, *Phifer*, we believe the court is empowered to exercise some discretion in excusing the untimeliness of the retrial. Although neither the defense nor prosecution is

completely blameless, the most effective parrying and manipulation in orchestrating a delay lies with the defendant personally.

Gibbs' retrial was to take place some twenty-one years after he was serving time for the murder.  He remained at SCI-Chester up until the middle or latter part of February 2005.  His prison years produced a very effective jailhouse lawyer as is evidenced by his correspondence and sophisticated filings.  His initial letter to Mr. Bugoj on November 10, 2004, even before this court's order of November 18th, manifests his solicitation of counsel's interest in representing him and that the county judge would have to appoint someone to represent him.  He wanted counsel to let him know when he got back to the jurisdiction of Pike County.  After Bugoj indicated an interest, Gibbs again wrote citing authorities on the issue of bail, and also expressed uncertainty if his appellate lawyer would continue to represent him though he would not mind his continuing as counsel.

In December 2004, Gibbs updated Bugoj on the progress in the appellate cases and the unlikelihood of the Commonwealth's success in attempting a review of the circuit decision.  He attributes the latter to Commonwealth stalling while the 120 days are ticking away.  At the end of December 2004, appellate counsel writes to Judge Kameen about the remand and urges appointing counsel for Gibbs, and that Bugoj was willing to take the appointment.  On January 11, 2005, after first being made aware of the remand, Judge Kameen appoints the public defender.

This is followed with Gibbs advising Bugoj that he wrote to the public defender objecting.  In the middle of February 2005, in considering the Commonwealth's objection to Bernathy's appointment, the court held a hearing at which defendant sat silently even though he, too, had prepared an articulate objection to Bernathy for some different reasons of conflict.  He writes to Bugoj again expressing his interest in his counsel.  Of course, at this point, with the appointment of Bugoj and pre-trial motions, it became obvious that the 120-day time frame indeed ticked away.

It is correct that ordinarily, the right to be furnished counsel does not depend on a request, *Carnley v. Cochran*, 369 U.S. 506, 513, 82 S.Ct. 884, 889 (1962).  This is ordinarily determined at the early stages of a case, but a defendant, such as Gibbs, who has had both trial and appellate counsel appointed for him, is sophisticated enough to give some indication to the proper authorities that he wants an attorney appointed for him.  The authorities are not required to read his mind, especially after he is housed for twenty-some years in a state correctional facility where he remained until February, 2005.  There can be no doubt he understood his right to have counsel appointed.  *Government of the Canal Zone v. Peach*, 602 F.2d 101, 105 (5th Cir. 1979); *Douglas v. Hendricks*, 236 F.Supp.2d 412 (D.N.J. 2002).

Part of the defense assertion that the Commonwealth was not prepared to go to trial within 120 days is that the testimony of Dr. Turchetti and that of other witnesses was not available for any trial on March 7, 2005.  While there is some question about the

availability of Dr. Turchetti before March 7th, a sworn declaration of a state investigator establishes that Dr. Turchetti was alerted on the need of his testimony on or about February 4, 2005.  In the case of another witness, that person was not identified or intended to be called until the name was first disclosed at the jury selection process in June.  None of this appears to be disputed. Regardless, and in all events, the judge concluded that the Commonwealth was ready in March.  The only continuance was at the request of the defense; perhaps to their unanticipated detriment resulting from the witnesses' testimony.[6]

II.

In *Yohn v. Love*, 76 F.3d 508, 525 (3d Cir. 1996), we find the court's language instructive.  In citing Supreme Court precedent as well as its own language, the court concluded that on retrial after a remand, as in this case, the state trial judge remains in the best position to make evidentiary determinations, and that hopefully, on retrial, the mistakes that were made during the earlier trial will not be repeated.  We express the same confidence in Judge Kameen's rulings, as well as the retrial of Gibbs.  Nor is a federal habeas corpus court permitted to maintain continuing supervision on a retrial conducted pursuant to a conditional writ.

---

[6]In his "petition" joining the Commonwealth's request that public defender Bernathy be removed, Gibbs offered that a per se conflict exists in a public defender from the same office being appointed, especially when he previously claimed ineffective assistance against a defender from the same office.  Gibbs suggests that this, too, delayed his retrial.  Of course, the trial judge did find a conflict based on state law.  However, in *Douglas v. Hendricks*, *supra*, the court held that there was no per se conflict in these circumstances.

*Pitchess v. Davis*, 421 U.S. 482, 487, 95 S.Ct. 1748, 1751 (1975). However confident in our conclusion, we will address one issue raised by Gibbs since his most recent trial.  It appears to be another basis for his requested relief.  That issue deals with the admissibility of the testimony of Dr. Turchetti, a defense psychiatrist in Gibbs' earlier trial, who was then court appointed in aid of his mental infirmity defense. As we noted earlier, the Commonwealth used Dr. Turchetti in Gibbs' most recent trial in June 2005.

The defense is relying on the remand opinion of the circuit court which was critical of the Commonwealth's use of Dr. Robert Sadoff, the Commonwealth's psychiatric expert, for inculpatory statements made to him by Gibbs in spite of his having provided *Miranda* warnings, and even though Gibbs was not proving an infirmity defense.  Gibbs claims the ruling had equal application to the testimony of Dr. Turchetti, because in the latest trial, Gibbs did not raise the defense of mental infirmity.  Judge Kameen considered this issue before trial in June 2005.  He found the testimony admissible on the authority of *Commonwealth v. Santiago*, 541 Pa. 188, 662 A.2d 610 (1995).  We agree that equating the testimony of Dr. Sadoff and Dr. Turchetti was not the holding of the circuit's remand in this case.  The district court in the *Yohn* case did what Gibbs suggests here.  Our circuit court in *Yohn* could not find support in the case law for a habeas court in our position to so direct.  It seems to us that the propriety of the lower court ruling in this case should be for the state courts.

-15-

For the foregoing reasons, the application is **DENIED**.

SO ORDERED.


s/Edwin M. Kosik
United States District Judge



Date: April 27, 2006